IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

RONALD TROXTEL,           )
    Plaintiff,             )
                          )
v.                        )      Civil Action No.: 02-PT-2338-M
                          )
FARMERS TELEPHONE COOPERATIVE )
OF RAINSVILLE, ALABAMA    )
                          )
    Defendant.             )

## MEMORANDUM OPINION

This cause comes on to be heard upon defendant's Motion for Summary Judgment, filed on July 22, 2003.

### FACTS AND PROCEDURAL HISTORY

Defendant Farmers Telephone Cooperative of Rainsville, Alabama ("Farmers") is a rural telephone cooperative covering parts of Jackson and Dekalb Counties. Farmers serves seven exchange areas: Henagar, Geraldine, Fyffe, Rainsville, Flat Rock, Pisgah, and Bryant. Farmers has a seven-member Board of Directors representing each of its seven exchange areas. Farmers Board Member Ed Whitton ("Whitton") represents the Henagar Exchange.

In the fall of 1999, Whitton informed Plaintiff Ronald Troxtel ("Troxtel"), who was forty-three (43) years old at the time, that an installer/repairman position (also known as an outside plant technician position) in the Henagar Exchange was due to become available and that he would recommend Troxtel for that position.[1] During that phone conversation, Troxtel claims, Whitton asked Troxtel's age, and Troxtel told him. Whitton purportedly replied that his age

---

[1] Troxtel testified that he stayed in touch with Whitton because he had heard in the community that a board member's recommendation was helpful in getting an interview.

might be a problem. In a subsequent telephone conversation with Whitton, Troxtel claims, Whitton commented that he would get Troxtel a job at Farmers before "both of us got too old." Troxtel took this latter comment as an optimistic indication that his age would not be a problem because Whitton would get him a job.[2]

Around September 1999, Larry Johnson ("Johnson), the Plant Manager and hiring decision maker, posted a job vacancy notice on the Board at Farmers announcing an open installater/repairman position. On September 17, Troxtel applied for the open Henagar installer/repairman job by reactivating the employment application he had first filed on May 30, 1994.[3] Along with his application, Troxtel submitted a recommendation letter from ATS Telephone and Data Systems, Inc., and two resumes. Seventeen individuals from the Henagar area applied for the vacant Henagar position, according to Johnson.[4] Whitton recommended to Johnson the following three applicants for the Henagar position: Troxtel, Timothy Shrader (aged thirty-two (32) at the time), and another applicant whom Johnson cannot name but personally knows and believes he is in his twenties.[5] As Plant Manager, Johnson was solely responsible for

---

[2] Troxtel cites only these two age-related comments by Whitton. Farmers has assumed, solely for summary judgment purposes, that Whitton made the comments ascribed to him.

[3] Troxtel first applied for a position at Farmers in May 1994 and then periodically re-initiated that initial application by contacting Farmers's Human Resources Manager. An installer/repairman's work generally involves the installation, repair, and serving of communication equipment and related equipment on telephone customer premises. Specifically, the installer/repairman makes single line telephone installation; identifies correct pairs in pedestals or on terminal blocks; connects aerial and buried drops; properly bonds buried drops and small buried cables; wires jacks and loud bells; works prewires and installs network interface devices; locates and repairs trouble in single line telephone installations; runs acceptance tests; uses loop checkers; conceals telephone cables and other equipment in buildings under construction; uses test equipment; performs service reporting and customer service; and may be required to install or repair two-line sets and check trouble on a key system or PBX.

[4] Johnson testified, "if a vacancy becomes open for the Henagar Exchange, that vacancy is filled by someone from the Henagar area."

[5] According to Johnson, Whitton was the only board member to discuss the vacant Henagar exchange job with Johnson and had not made any hiring recommendations to Johnson in the past.

filling installer/repairman job positions in 1999.[6] Johnson pulled the recommended individuals' applications and attempted to line up interviews. Johnson contacted Shrader first, set up an interview, and interviewed him.

However, according to Johnson's deposition, within a week or two after Whitton made these three recommendations, Whitton and Johnson spoke at a company picnic. Johnson testified to this conversation as follows: "[Whitton] told me that he was not in the hiring business, that I could hire who I wanted to. He said, 'You can interview the people I gave you the names on or you don't have to.' He said, 'All I told them was I would turn their names in.' He said, 'You hire who you want to.'

After this conversation, Johnson alleges, he re-filed the applications of the other two applicants recommended by Whitton (Troxtel and the unidentified individual) "and did not consider them any further." Farmers neither interviewed nor hired Troxtel. Johnson alleges that he decided not to hire either Troxtel or the two other recommended applicants, who were younger than forty, because he did not want to hire an employee beholden to a Farmers' board member. Johnson testified that he believes that if a board member is involved in the hiring process, the recommended employee, once hired, will feel like he has an alternate avenue to report problems or issues if he does not like what is going on at Farmers. Johnson would rather employees feel they owe their job to Johnson alone. Furthermore, Johnson testified, his beliefs were based on past experience with other board members (not Whitton) who had either directed him to hire a particular applicant or had pressured him to do so. Since the early 1990's, Johnson

---

[6] Farmers notes that Johnson had been plant manager for nearly seventeen years and was fifty-two in Fall 1999.

3

testified, he had only been able to hire three to four employees without pressure from a board member compared to fifteen to twenty employees hired under Board pressure. According to Johnson, the only reason he did not hire Troxtel was that he came recommended by Whitton.[7] Troxtel cites, in addition to this reason, Farmers's EEOC statement:

> Johnson . . . chose three people he determined were best qualified to fill the position of service technician . . . . It is the position of Farmers Telephone Cooperative, Inc., that it denies that it or any of its employees have discriminated against Mr. Troxtel on account or his age or any other reason. The other applicants were deemed better qualified by the parties responsible for making the employment decision.

To fill the Henagar vacancy, Johnson interviewed three applicants: Timothy Schrader (the Whitton-recommended applicant who was allegedly not considered after the company picnic), Kelan Samples, and Jon Hill[8] (all under age forty). On October 25, 1999, Farmers hired Kelan Samples, a nineteen-year-old, for the installer/repairman position. Johnson testified that he selected Samples because he was impressed by Samples's sincerity, good attitude, activities, and indications that Samples was accustomed to hard work.

Johnson testified that he does not use written criteria to define the qualifications for new hires but does assess applications based on certain considerations. First, Johnson stated, he reviews the neatness of the application, community and school activities, and where the applicant worked and attended school. Further, Johnson testified, he uses the interview process to determine whether or not the applicant has a "good attitude," i.e., would be pleasant, work well with the public, and get along with other employees. Moreover, Johnson testified, he

---

[7] Johnson testified that he did not recall meeting Troxtel in 1975 and "If I have ever seen [Troxtel] before yesterday, I don't know it."

[8] According to Farmers, Hill withdrew himself from consideration for the installer/repairman job after revealing an extraordinary fear of spiders.

4

reviews the educational background of the potential applicant and whether or not the applicant has one or two years of college or is working towards a degree. Johnson testified further that he considers the experience of the individual applicant: "If they have some prior experience, that can be beneficial." and "if somebody has experience in telecommunications, it tends to catch your eye." Finally, Johnson checks references following an interview.

Farmers, while agreeing with these general criteria, notes that the plaintiff's response to summary judgment "conspicuously omits integral parts of Johnson's testimony about how he selects applicants for hire." Farmers notes that Johnson testified that "attitude is everything." Regarding experience or training, Farmers adds, Johnson testified that prior experience or training could be beneficial but "it's not that big of a deal" since most hired employees lack prior experience or training. In fact, Johnson explained, prior telecommunications experience would almost "count against somebody," because "[d]ifferent people do things different ways and Farmers has "our own way of doing it." Johnson testified that Farmers provides on-site training and assigns new hires to work with an experienced Farmers' employee "for at least a year and probably longer." Also, Johnson testified that he looks for evidence that the applicant is well-rounded, such as community involvement in civic organizations, membership in clubs, and participation in school sports.

Troxtel argues he was "overwhelmingly"[9] qualified for the open installer/repairman position. Farmers denies this allegation on the basis that Troxtel (and the other two Whitton-recommended applicants) lacked one critical qualification – they had been recommended by board member Whitton, and Johnson, when given the opportunity, preferred not to hire anyone

---

[9] Farmers disputes the adjective "overwhelming" as unsupported by Troxtel's record cites.

who would be beholden to a Farmers's board member.[10] As evidence of his qualifications, Troxtel highlights the following: two years of education in telecommunications at Gadsden State Community College; training with ATS Telephone and Data Systems, Inc.;[11] and miscellaneous technical qualifications.[12] According to Troxtel, pole climbing was the only activity on the job description that he had not already learned, but that was no drawback since Farmers offered new installers on-the-job training or schooling in pole climbing.

Troxtel compares his application and qualifications to Samples's.[13] While both applications were tidy, Troxtel notes, in the section entitled "specialized training, apprenticeship, skills, and extra-curricular activities, Troxtel's application reflected experience with particular telecommunications-related systems and activities, while Samples's simply reflected involvement in Students for Christ, Boy Scouts, Future Farmers of America, and sports.[14] Troxtel again mentions his two years at Gadsden State Community College studying telecommunications, his appearance on the Dean's List for several quarters, his grade reports

---

[10] Addressing other potential qualifications, Farmers "submits that the plaintiff's education and experience are not material, as they had nothing to do with the reason why the plaintiff was not hired."

[11] Troxtel alleges that he learned to troubleshoot, utilize key systems, run fiber optic cables, and make repairs. Regarding outside plant work at Gadsden State, Troxtel asserts that he "[did] a layout on land and designate[d] an area to put an underground cable. We were responsible for the whole campus." Furthermore, Troxtel alleges, he learned to work out of the lifts on "bucket trucks."

[12] These miscellaneous qualifications included basic telecommunications, power systems, DePaBX-Seimens 192, Mitel 100 Programming, fiber optic splicing, running drop cable, hands-on training, SL-1, station repair, OSP1 and 2, key systems, advance DePaBX, and selective subjects troubleshooting.

[13] In its summary judgment submission, Farmers deems any comparison of Troxtel's and Samples's qualifications immaterial because "those factors played no part in Johnson's rejection of the plaintiff and the two other, younger applicants (both under 40) who had been recommended by board member Whitton."

[14] Troxtel's summary judgment opposition notes: "Troxtel did not list his former high school activities from some twenty-five years prior on his application."

reflecting high marks in telecommunications,[15] and his five-month internship as a temporary installation technician at ATS Telephone and Data Systems, Inc; on the other hand, Samples had completed one year at Northeast Community College studying chemistry and sociology and lacked any telecommunications education, training, or experience.

That parties do not dispute that Troxtel never saw or heard anything to indicate that Johnson discriminates against applicants because of their age, and Troxtel has no information that Johnson willfully took Troxtel's age into account in making the decision not to hire Troxtel. Troxtel has not testified to having any information or knowledge that Whitton relayed or discussed Troxtel's age with Johnson or that Johnson even knew Troxtel's age. In Troxtel's deposition, Farmers alleges, Troxtel admitted that you cannot tell his age from looking at his job application.[16]

On September 23, 2002, Troxtel filed a complaint pursuant to the Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers' Benefit Protection Act ("OWBPA"), alleging that Farmers failed to hire him for the Henagar exchange position because of his age and hired a nineteen-year-old, less qualified candidate instead.[17]

---

[15] Johnson testified that he could not recall seeing or reviewing these grade reports.

[16] When asked whether Troxtel thought Johnson knew Troxtel's age when he decided not to hire him, Troxtel stated "Oh yeah. You can tell by the application, by education. You can tell by when you graduated high school how old somebody is." Although Troxtel later admitted that his reactivated employment application does not reflect when he graduated from high school, this court notes that one of the resumes allegedly attached to Troxtel's application could have provided a clue to his age. Under the "Experience" heading, the resume notes that Troxtel worked as a painter for Mississippi Valley Steel from June 1974-1975. *See* Pl. Ex. 7 to Johnson's deposition. Assuming that Johnson was aged fifteen or older in this job, one could calculate that Troxtel would be age forty or over as of October 1999. While Johnson testified to no specific recall about Troxtel's resume, he noted that he would have reviewed it if it was with the application. Earlier, Johnson had testified that resumes "would not be separate. They would be with the applications."

[17] Troxtel's complaint seeks declaratory and injunctive relief, compensatory and punitive damages, and attorney's fees and costs. No issue has been raised as to the timeliness of a charge or of this action.

7

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the

non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS

### I.     Troxtel's Position

Troxtel addresses separately the two allegedly legitimate, non-discriminatory reasons Farmers has given for failing to interview and hire Troxtel for the vacant 1999 service technician position: the hired employee's superior qualifications (*see* EEOC statement that Johnson chose the best-qualified candidates to fill the vacant position of installer/repairman) and the disqualifying factor of Whitton's referral of Troxtel (*see* Johnson's deposition testimony that this was the only reason that Johnson did not interview Troxtel). Troxtel argues that these two non-discriminatory reasons are distinctly different. Troxtel then cites *Combs v. Plantation Patterns*, 106 F. 3d 1519, 1538 (11th Cir. 1997) for the proposition that plaintiff can defeat summary judgment by proffering sufficient evidence to demonstrate "such weakness, implausibilities, *inconsistencies*, incoherences, or contradictions in the employer's proffered legitimate reasons for his actions that a reasonable fact-finder could find them unworthy of credence." (Emphasis added)(citations omitted).

Regarding Farmers's "qualifications" reason, Troxtel argues that Farmers cannot establish that Samples's, the nineteen-year old ultimately hired for the repairman position, was better qualified even according to Johnson's hiring criteria. Troxtel repeats his specialized telecommunications qualifications/experience and Samples's lack of similar qualifications. Additionally, Troxtel notes, Samples only checked "calculator, typewriter" under the Specialized Skills section of the application, while Troxtel checked "PC, calculator, typewriter, and PBX System." Evidence of pretext, Troxtel argues, has been established. As further evidence of pretext, Troxtel contends,

9

Johnson first testified as to the benefits of communications education and training but then quixotically testifies that prior training is "not that big of a deal" and that prior telecommunication experience "would almost count against somebody."

Moreoever, regarding Whitton's referral of Troxtel, Troxtel emphasizes Johnson's testimony that Whitton told him at the company picnic that Johnson could hire whomever he wanted. Again, Troxtel contends, inconsistency creates evidence of pretext. Troxtel argues: "It is simply not credible to believe that Johnson thought an employee would owe his job to a Board Member when Johnson had the sole authority with regards to the hiring decision."[18]

Additionally, Troxtel raises alleged "statistical inferences" created by Johnson's hiring of installer/repairmen since 1995. Since January 1, 1995, Troxtel notes, Farmers has hired seven installers/repairmen who are still employed with the company. These seven installers ranged in age from nineteen to twenty-five at the time of hire. Troxtel contends that "Johnson has not hired anyone over the age of forty for the installer-repairman position, making his statement that the people that he has hired do not have prior experience or training ring true."

Finally, Troxtel contends, Troxtel's discussions with Whitton provide further evidence of pretext. According to Troxtel, Whitton told him telecommunications education was what Farmers was looking for and that Whitton would recommend him for the vacant Henagar post. Whitton proceeded to ask Troxtel's age and responded "that might be a problem" when Troxtel told him.

---

[18] The issue may be whether the hiree thinks there has been such influence. As further evidence of pretext, Troxtel relies upon Johnson's testimony that current Farmers's Assistant Manager Chris Bryant recommended Kelan Samples; Troxtel points to Johnson's apparent disregard for whether or not Samples would be "beholden" to his recommender, Bryant, as evidence that Whitton's referral is an illegitimate articulated reason to not hire Troxtel. In reply, Farmers contends, "In virtually every business on earth, operational management participate in the process of hiring rank-and-file employees. Bryant was not a board member, nor was he otherwise superior to Johnson." This court notes a clear distinction.

10

In assessing this evidence, Troxtel argues: "If Troxtel's version of the story is believed by the fact-finder then direct evidence of discrimination can establish pretext. If [Farmers's] version is believed, then Whitton's failure to respond to Troxtel's question regarding the age issue is evidence of pretext."[19]

## II.     Farmers's Position

### A.     Troxtel cannot establish a prima facie case for his failure to hire claim

In a failure to hire case lacking direct evidence of discrimination, Farmers argues, ordinarily the plaintiff must show: (1) he was in the protected age group (40 or over); (2) he was qualified for the position at issue; and (3) a younger employee was hired to fill the position. *See, e.g., Earley v. Champion Int'l Co.*, 907 F.2d 1077, 1082 (11th Cir. 1990); *Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998).[20] However, Farmers contends, in this case the third prong (someone younger was hired) should not apply "because the decision to not hire the plaintiff was separate and apart from the decision over who would be hired."

Farmers notes that courts have cautioned against mechanical application of the prima facie formula.[21] A prima facie case, Farmers argues, requires evidence that, if left unexplained, gives rise to an inference of unlawful discrimination. *See Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)("A prima facie case under *McDonnell Douglas* raises an inference of discrimination only

---

[19] Farmers's EEOC response states that Whitton denied telling Troxtel that an applicant would be hindered by age, and that Troxtel, not Whitton, brought up the topic of age (and Whitton did not respond). The court does not agree that such evidence would be "direct." Whitton did not make the decision. It may not even be admissible.

[20] In an ADEA failure to hire case, this court notes, an additional element of the plaintiff's prima facie case is proof of the adverse employment action. *See Turlington*, 135 F.3d at 1432. Failure to hire is, of course, such an action.

[21] *See Pennington v. City of Huntsville*, 93 F. Supp. 2d 1201, 1212 (N.D. Ala. 2000)(citations omitted); *Lincoln v. Bd. of Regents of Univ. Sys.*, 697 F. 2d 928, 937 (11th Cir. 1983).

11

because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.")

Here, Farmers contends, the fact that Johnson hired Samples, an under-forty employee, does not raise an inference of unlawful discrimination because the process of selecting him was separate and apart from the process by which Johnson rejected both Troxtel and the two under-forty applicants whom Whitton had recommended.

Additionally, Farmers argues, the appropriate comparator in a prima facie case must be similarly situated to the plaintiff in all material respects.[22] According to Farmers, Troxtel and Samples are not similarly situated in one critical respect: Troxtel was recommended by board member Whitton and Samples was not. Instead, Farmers argues, the only appropriate comparators are the other two applicants recommended by Whitton, who were both under age 40 and both not considered for the available job.[23] Since these younger applicants were similarly situated and treated, Farmers argues, the inference is that Troxtel did not face discrimination.

Additionally, Farmers argues, the fact that decision maker Johnson and Troxtel were both in the ADEA's protected age bracket, while not dispositive, "militates, absent evidence to the

---

[22] Farmers cites the following cases for this proposition: *Raybon v. Ala. Dep't of Pub. Safety*, 2001 U.S. Dist. LEXIS 7240, * 11 (M.D. Ala. April 11, 2001)(citing *Silvera v. Orange Cty. Sch. Bd.*, 244 F.3d 1253, 1259 (11th Cir. 2001); *Maniccia v. Brown*, 171 F.3d 1364, 1368-69 (11th Cir. 1999). In each of the cited cases, this court notes, the plaintiffs were fired from jobs because of alleged misconduct and sought to show that other employees who were engaged in similar misconduct had been treated differently by the employer. In *Raybon*, the court required the comparator to be "someone with a personnel file with misconduct of similar quantity, quality, and recency as [the fired employee's]." 2001 U.S. Dist. LEXIS 7240 at *11-12. In *Maniccia*, the court required "that the quantity and quality of the comparator's misconduct be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." 171 F.3d 1364 at 1368. (Citation omitted).

[23] As mentioned earlier, Shrader (one of the three Whitton-recommended applicants) was interviewed by Johnson. This court has not found any indication of the exact date of that interview, i.e., whether it fell before or after the Whitton-Johnson conversation at the company picnic.

12

contrary, against an inference of discriminatory animus." *See Harris v. Delchamps, Inc.*, 5 F. Supp. 2d 1316, 1332 (M.D. Alabama)(involving decision maker and discriminatee of the same race).[24] Farmers further notes that there is no evidence that Johnson, the decision maker, knew plaintiff's age. Absent such knowledge, Farmers contends, Johnson lacked the requisite intent to prove age discrimination. *See Lubetsky v. Applied Card Serv.*, 296 F. 3d 1301 (11th Cir. 2001), *cert. denied*, 2003 U.S. LEXIS 611 (2003)(holding in disparate treatment religious discrimination case that "an employer cannot intentionally discriminate against an individual based on his religion unless the employer knows the individual's religion").

### B. Troxtel Cannot Establish that Johnson's Reasons for Not Hiring Him Were a Pretext for Age Discrimination

Even if Troxtel could make his prima facie case under the ADEA, Farmers argues, defendant is entitled to summary judgment because Johnson rejected Troxtel (and two other applicants) for the same legitimate non-discriminatory reason. Troxtel has not established the necessary showing for pretext since plaintiff must show "such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could find [each reason] unworthy of credence." *See Combs,* 106 F.3d at 1538. Farmers cites Troxtel's testimony that Troxtel has no evidence to dispute Johnson's proffered reason for not hiring him, i.e., Whitton's reference as a disqualifier. Without a proffer of sufficient evidence to create a genuine issue of material fact about pretext, Farmers argues, the employer is entitled to summary judgment. *See Chapman*, 229 F.3d 15 1024-25.

---

[24] The full quote from *Harris*, this court notes, reveals an additional element considered by the district court but omitted by Farmers: "[T]he fact that the primary decision maker was the same race as the employee *and* the fact that this decision maker offered the Market Manager position to other employees who were the same race as the Plaintiff militates, absent any evidence to the contrary, against an inference of discriminatory animus." (Emphasis added).

13

Addressing Farmers's general position in response to plaintiff's EEOC charge, i.e., that Farmers chose the best qualified candidate, Farmers argues that this EEOC statement is consistent with Johnson's specific articulated reason for not picking Troxtel, since the "qualification" that eliminated Troxtel and other younger applicants was recommendation by a board member.[25] Farmers reasserts the immateriality of comparing Troxtel's and Samples's other qualifications, such as schooling, community activities, and experience.

Farmers then cites several Eleventh Circuit cases supporting employers' freedom to make hiring decisions without legal repercussions as long as the decisions are not unlawfully motivated. *See Combs,* 106 F.3d at 1543 (forbidding employee to substitute his "business" judgment for employer's); *Alexander v. Fulton County, GA,* 207 F.3d 1303, 1341 (11th Cir. 2000)("[I]t is not the court's role to second-guess the wisdom of an employer's decisions as long the decisions are not unlawfully motivated"); *Nix,* 738 F.2d at 1187 (finding "employer may [act] for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason"); *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir. 1991)(citations omitted)("Federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers . . . . [the court's] inquiry is limited to whether the employer gave an honest explanation of its behavior.")

While Troxtel argues that Johnson's articulated reason is not credible, Farmers notes, there is no evidence that the reason is false.

---

[25] Notably, Farmers states, "Samples was not tainted by any board member's recommendation, which, in Johnson's judgment, better qualified Samples for the job." This use of the term is arguably a stretch.

14

Turning to Troxtel's "statistics," i.e., the names and ages (under forty) of seven employees whom defendant hired as installers/repairmen from 1995 onward and who still work at the company, Farmers contends that these statistics are of the type called "nonsensical" in *Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 651 (1989). *Wards Cove*, Farmers argues, emphasizes the need to limit any statistical comparison of the composition of the job at issue to the composition of the qualified applicant pool. According to Farmers, absent such carefully tailored statistics, no inference of discrimination is possible. *See Groves v. Ala. State Bd. of Ed.*, 776 F. Supp. 1518, 1524 (M.D. Ala. 1991)(involving disparate impact). Farmers notes that Troxtel has offered no evidence regarding the "qualified applicant pool" for the October 1999 job. In keeping with *Wards Cove*, Farmers contends, the Eleventh Circuit has refused to allow such limited, raw information to support any "statistical inference" of discrimination. *See, e.g., Hill v. Seaboard Coast Line R.R.*, 885 F.2d 804, 812-13 (11th Cir. 1989)[26]; *Krieg v. Paul Revere Life Ins. Co.*, 718 F.2d 998, 1001-02 (11th Cir. 1983); *Pace v. Southern Ry. System*, 701 F.2d 1383, 1388-89 (11th Cir. 1983).

Finally, Farmers contends, even assuming that Whitton made the age-related comments ascribed to him, Whitton was not the employment decision maker and thus his comments cannot provide evidence of pretext. Indeed, Farmers argues, when discussing his recommendations with

---

[26] In *Hill*, for instance, the court noted the insufficiency of plaintiff's statistics showing that as of a fixed date before the EEOC charge, there was only one black foreman out of twenty-five positions (while there were approximately twelve percent black carmen, only four percent of the foremen were black). The court, deeming this evidence "inadequate proof of disparate impact," stated:

> [T]he plaintiffs have not argued to us . . . over what period the time the whites were promoted. To the extent that they were promoted before the current promotion procedure was adopted, their promotion may not be probative of disparate impact in the operation of the current system. Nor have the plaintiffs argued that the same number of blacks relative to whites obtained in the applicant pool during the period when this promotion procedure applied. The plaintiffs' bare assertion that their figures demonstrate disparate impact cannot, without more, suffice.

Johnson at the company picnic and telling Whitton he had the freedom to interview and hire whomever he wished, Whitton explicitly removed himself from the hiring process. At worst, Farmers contends, Whitton's age-related statements to Troxtel were "stray remarks by a non-decision maker" qualifying as neither direct nor circumstantial evidence of any discriminatory motive.[27]

### CONCLUSIONS OF THE COURT

The <u>possible</u> evidence suggesting discrimination:

(1) Previously fifteen to twenty employees <u>had</u> been hired under Board pressure as compared to three or four who had not; and

(2) The reason given to the EEOC related to qualifications, not who recommended the applicants.

It is questionable whether the ages of other persons hired for the positions is statistically relevant. In the absence of proof of the ages of applicants, it would not be. Defendant refers to a "qualified" applicant pool while otherwise suggesting that qualifications is not a substantial requirement. The relevant "pool" would be the various pools from whom other applicants were hired and their ages. The court sees no evidence in this regard.

There has not been, of course, any direct evidence disputing Johnson's alleged "Whitton

---

[27] Farmers cites Justice O'Connor's concurrence in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 277 (1989)("nor can statements by non-decision makers, or statements made by decision makers unrelated to the decisional process itself, suffice to satisfy Plaintiff's burden") as well as several Eleventh Circuit cases. *See Jones v. Bessemer Carraway Med. Ctr.*, 151 F.3d 1321, 1323 (11th Cir. 1998)(finding that supervisor's race-related statements to plaintiff, which were "not associated with the events of the day leading to Plaintiff's discharge," were insufficient to establish a prima facie case of discrimination); *EEOC v. Alton Packaging, Inc.*, 901 F.2d 920, 924 (11th Cir. 1990).

recommendation" reason. The court cannot see how such an alleged mental operation could be refuted. The reason given to the EEOC does somewhat belie the purported reason. If Johnson's "Whitton recommendation" is true, it of course would not be discriminatory. The court cannot, however, decide issues of fact.

The case is close. Whether the evidence is sufficient to defeat the motion for summary judgment is obviously a legal one. It might benefit all if a final legal decision is reached before trial. Therefore, the court will deny the motion but will certify the case pursuant to 28 U.S.C. § 1292(b).

This 8th day of September 2003.

*[signature]*
ROBERT B. PROPST
**SENIOR UNITED STATES DISTRICT JUDGE**